HENNA GHAFOOR (Texas State Bar No. 24079867) *(admitted pro hac vice)*
Email: *hghafoor@mp-lg.com*
MOSAIC PARADIGM LAW GROUP PC
10370 Richmond Avenue, Suite 850
Houston, Texas 77042
Telephone:    (281) 805-7169
Facsimile:    (281) 805-7172

LYNDSEY C. HEATON (State Bar No. 262883)
E-Mail:    *lheaton@sideman.com*
SIDEMAN & BANCROFT LLP
One Embarcadero Center, Twenty-Second Floor
San Francisco, California 94111-3711
Telephone:    (415) 392-1960
Facsimile:    (415) 392-0827

Attorneys for Plaintiff
SEMICONDUCTOR GLOBAL SOLUTIONS

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| SEMICONDUCTOR GLOBAL SOLUTIONS,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CAPITAL ASSET EXCHANGE & TRADING, LLC; CAE ONLINE LLC; RYAN FRANZKE JACOB, individually; and JEFFREY SCOTT ROBBINS, individually,<br><br>　　　　　Defendants. | Case No. 4:25-cv-04075-HSG<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' NOTICE OF MOTION AND MOTION BY DEFENDANTS CAPITAL ASSET EXCHANGE & TRADING LLC, CAE ONLINE LLC, RYAN JACOB, AND JEFFREY ROBBINS TO STAY ACTION PENDING DETERMINATION BY OFFICE OF FOREIGN ASSETS CONTROL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF [DKT. 37]**<br><br>Date:    July 31, 2025<br>Time:    2:00 pm<br>Crtrm.:    2, Oakland Courthouse<br><br>Honorable Judge Haywood S. Gilliam, Jr.<br><br>Trial Date:    n/a |

1

## <u>TABLE OF CONTENTS</u>

INTRODUCTION……………………………………………………………...………4

STATEMENT OF FACTS……………………………………………………………..7

LEGAL STANDARD………………………………………………………………14

ARGUMENTS AND AUTHORITIES……………………………………………………14

   A. No Justiciable Issue Remains for OFAC Because SMIC Is Not Subject to
   NPWMD Sanctions……………………………………………………………15

      1. SMIC is not listed under Executive Order 13382's Annex or implementing
      regulations (31 C.F.R. § 544.201) nor has OFAC designated SMIC in the
      NPWMD program………………………………………………………15

      2. 31 C.F.R. § 544.201 prohibits only dealings with "blocked property," and
      no NPWMD determination is needed…………………………………...………15

   B. Defendants Misapply NPWMD Sanctions Instead of CMIC-EO 13959 Sanctions….16

      1. CMIC-EO13959 program restricts the purchase or sale of certain
      securities—it does not block "property or interests in property" outright……......16

      2. Because Defendants improperly transposed NPWMD prohibitions onto
      a CMIC designation, their entire theory of stay is flawed………………………17

   C. Primary Jurisdiction Doctrine Does Not Apply Because the Legal Question Is
   Unambiguous and Does Not Require OFAC Expertise…………………………………17

      1. The primary jurisdiction doctrine is meant for issues demanding agency
      expertise or uniform administration………………………………………...17

   D. Permitting the stay would needlessly delay this case and undermine this Court's
   role in resolving straightforward legal disputes………………………………………18

   E. Issuing SGS a refund is not a prohibited act under BIS regulations…………………20

   F. It is Against Public Policy to Stay this Action………………………………………..21

   G. Defendants Have Not Satisfied Their Burden of Showing an Irreparable Injury
   if a Stay is Denied……………………………………………………………………22

CONCLUSION………………………………………………………………………22

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LAW OFFICES

SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

Case No. 4:25-cv-04075-HSG

PLAINTIFF'S OPPOSITION TO DEFENDANTS' NOTICE OF MOTION AND MOTION TO STAY ACTION

# TABLE OF AUTHORITIES

**Cases**

*Brown v. MCI WorldCom Network Servs., Inc.,* 277 F.3d 1166, 1172 (9th Cir. 2002)................18

*Doe #1 v. Trump*, 957 F.3d 1050, 1058 (9th Cir. 2020)................................................22

*E. Bay Sanctuary Covenant v. Trump*, 354 F. Supp. 3d 1085, 1089 (N.D. Cal. 2018).............6, 14

*Eagle Star Rock Prods. LLC v. PCC Structurals, Inc.*, 756 F. Supp. 3d 1062, 1079
(D. Or. 2024)..............................................................................................6

*Entangled Media, LLC v. Dropbox Inc.*, 732 F. Supp. 3d 1120, 1124 (N.D. Cal. 2024)...........21

*Jenam Tech, LLC v. Google LLC*, 630 F. Supp. 3d 1208, 1212 (N.D. Cal. 2022)....................21

*Mccabe v. Floyd Rose Guitars*, No. 10-CV-0581 JLS JMA, 2011 WL 1379861, at *1
(S.D. Cal. Apr. 12, 2011)................................................................................21

*Robles v. Domino's Pizza, LLC*, 913 F.3d 898, 910 (9th Cir. 2019)................................18

**Statutes**

15 C.F.R. § 744.22...................................................................................12, 20

15 C.F.R. § 744.22(f)(1).............................................................................12, 20

15 C.F.R. § 744.6(b)(5)..............................................................................12, 20

15 C.F.R. § Pt. 744, Supp. 7.........................................................................12, 20

31 C.F.R. § 544.201.............................................................................15, 16, 17

31 C.F.R. § 544.201(a)...................................................................................10

31 C.F.R. § 586.201......................................................................................10

15 C.F.R. § 744.6(a)..................................................................................20, 21

**Other Authorities**

Addressing the Threat From Securities Investments That Finance Certain Companies
    of the People's Republic of China, 86 FR 30145..................................6, 10, 16, 17

Blocking Property of Weapons of Mass Destruction Proliferators and Their
Supporters, 70 FR 38567................................................................................15

Chinese Military-Industrial Complex Sanctions Regulations, 87 FR 8735-01..........................10

Continuation of the National Emergency With Respect to the Proliferation of Weapons
    of Mass Destruction, 89 FR 88867....................................................................9

Weapons of Mass Destruction Proliferators Sanctions Regulations, 74 FR 16771-01...........10, 17

LAW OFFICES

SIDEMAN & BANCROFT LLP

ONE EMBARCADERO CENTER, 22ND FLOOR

SAN FRANCISCO, CALIFORNIA 94111-3711

Case No. 4:25-cv-04075-HSG

PLAINTIFF'S OPPOSITION TO DEFENDANTS' NOTICE OF MOTION AND MOTION TO STAY ACTION

## INTRODUCTION

Plaintiff SEMICONDUCTOR GLOBAL SOLUTIONS ("SGS"), hereby brings its opposition to Defendants, CAPITAL ASSET EXCHANGE AND TRADING, LLC ("CAET"); CAE ONLINE LLC ("CAEO"); RYAN FRANZKE JACOB; and JEFFREY SCOTT ROBBINS' (CAET and CAEO, collectively "CAE"; all Defendants, collectively "Defendants"), motion to stay this action pending a determination by the United States Treasury Department's Office of Foreign Assets Control ("OFAC") regarding CAET's alleged May 16, 2025 application for a license to refund the payment made by SGS for equipment Defendants admit they never delivered. SGS submits that Defendants' motion is yet another delay tactic to evade justice and should be denied for the reasons further stated herein.

This case concerns the elaborate scheme of Defendants to rob legitimate foreign entities doing business in the United States, such as SGS, out of millions of dollars by first abusing the United States' regulatory system and then exploiting the Courts.[1] SGS initiated this lawsuit on **August 14, 2024**, in connection with a contract entered in **late-2022** for the procurement by CAE two used/salvaged scanning electron microscopes (the "Equipment") for the known purpose of refurbishment and re-sale of same to an un-affiliated end user designated by SGS. *See* Dkt. No. 1. The Complaint was amended once on **September 27, 2024**. *See* Dkt. No. 15, *Plaintiff's First Amended Complaint* ("FAC"). Almost nine months later, no substantial movement can be made due to Defendants' cumulative filings of pre-answer motions to dismiss, and now a motion to stay proceeding seeking further delay of these proceedings to the detriment of SGS.

In support of their most recent motion, Defendants admit they owe SGS a refund of $2,000,000 for the undelivered equipment, but then seek to mislead the Court into believing that

---

[1] CAE is currently involved in nine other lawsuits in this jurisdiction with similar allegations as those made by SGS – 5:24-cv-9045, 5:24-cv-8551, 5:24-cv-9451, 5:25-cv-2144, 24-cv-444671, 24-cv-445973, 24-cv-448687, 24-cv-450570, and 24-cv-451071.

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

LAW OFFICES

SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

they need a license from the Office of Foreign Asset Control ("OFAC") to do so. *See* Dkt. No. 37. To this end, Defendants argue that SGS is partially owned by Semiconductor Manufacturing International Corporation ("SMIC"), an entity listed on the OFAC Non-SDN Chinese Military-Industrial Complex Companies List. *Id*.

SGS is a private venture capital-backed company that provides comprehensive upgrade and optimization solutions for used/refurbished semiconductor equipment. *See* FAC , ¶ 10. It was publicly reported in China in 2018 that SMIC International Holdings Limited ("SIHL") is an investor in SGS. *Id*. at ¶ 11. **SIHL's** parent company is Semiconductor Manufacturing International Corporation ("SMIC"). *Id*. SMIC is widely known to be a partially state-owned publicly listed Chinese pure-play semiconductor foundry company. *Id*. It is the largest contract chip maker in mainland China. *Id*. As a result, SMIC is deemed a **partially** regulated entity under the government regulations at issue (*id*.), and the only sanctions applicable to SMIC pertain to the **purchase and sale of its publicly traded securities.** No such transaction exists here. SGS's distant relationship with SMIC was disclosed to CAE in 2021 prior to contract formation, but should also have become known to Defendants during their required due diligence on SGS when SGS began doing business with CAE in 2021. Yet, CAE proceeded to complete twelve prior transactions with SGS without raising such "concern", and now conveniently uses SMIC as an excuse for its failure to perform the subject contract with SGS, or refund SGS its purchase price.

Defendants now seek to stay SGS' claims based on two theories:

First, Defendants argue that this action should be stayed under the primary jurisdiction doctrine. *See* Dkt. 37, p. 7.  Traditionally, a court weighs four factors when applying the doctrine: "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in

LAW OFFICES

SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1  administration." *Eagle Star Rock Prods. LLC v. PCC Structurals, Inc.*, 756 F. Supp. 3d 1062,

2  1079 (D. Or. 2024). Although SMIC is listed on the OFAC Non-SDN Chinese Military-Industrial

3  Complex Companies List, Defendants fail to specify that SMIC is a **NON-SDN** entity subject to

4  the OFAC **CMIC-EO13959** program. *See* Declaration of Henna Ghafoor ("Ghafoor

5  Declaration), Ex. A. Under this program, the **only prohibitions** pertain to the purchase and sale of

6  SMIC's publicly traded securities. *See* Addressing the Threat From Securities Investments That

7  Finance Certain Companies of the People's Republic of China, Executive Order dated June 3,

8  2021, 86 FR 30145. Defendants fail to articulate how issuing SGS a refund in any way relates to

9  the purchase or sale of SMIC's publicly traded securities. Instead, Defendants argue that

10  Executive Order 13382 provides OFAC jurisdiction over the issue of providing a refund to SGS.

11  *See* Dkt. 37, p. 8. Yet, once again, Defendants fail to appreciate that OFAC designates entities

12  subject to this Executive Order under the NPWMD program, discussed in more detail

13  hereinbelow. SMIC is **NOT** subject to the NPWMD program. *See* Ghafoor Decl., Ex. A. Because

14  the only relevant OFAC regulations pertain to the purchase and sale of SMIC's publicly traded

15  securities, an activity which has no presence in this case, there is no issue or activity for which

16  OFAC guidance is required.

17

18

19        Second, Defendants argue that a stay is appropriate due to the Court's broad discretion in

20  controlling the disposition of causes in on its docket. In exercising its discretion, the Court must

21  consider four factors: "(1) whether the stay applicant has made a strong showing that he is likely

22  to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3)

23  whether issuance of the stay will substantially injure the other parties interested in the proceeding;

24  and (4) where the public interest lies." *E. Bay Sanctuary Covenant v. Trump,* 354 F. Supp. 3d

25  1085, 1089 (N.D. Cal. 2018). Defendants fail to satisfy these factors.

26        To support their claim of irreparable injury, Defendants argue that directing CAE to refund

27

28

SGS's payment could force CAE to violate OFAC or BIS regulations. *See* Dkt. 37, p. 10. But, as explained above, OFAC regulations are plainly inapplicable here. Furthermore, Defendants have not produced any document evincing the filing of an application or any other attempt to seek guidance or licensing from BIS regarding a refund to SGS, nor have they demonstrated any real risk of enforcement action. Assume *arguendo* that such an application were filed, the timing of same is indicative of Defendants' true purpose. The parties started working together in 2021; the subject contract was entered in late-2022; Defendants claim that CAE failed to perform or issue a refund due to concerns about EAR and BIS regulations [for the year thereafter]; yet, they failed to seek any guidance from OFAC until May 2025.

Defendants also argue that granting a stay would serve the public interest by avoiding an inconsistent determination by OFAC on applicable regulations. However, as noted above, OFAC has already determined the scope of prohibited transactions involving SMIC, and those restrictions are limited to the purchase and sale of publicly traded securities. No OFAC regulation pertaining to SMIC prohibits a refund or financial transactions like those at issue between SGS and CAE here. Accordingly, there is no legitimate public interest in delaying this case. On the contrary, judicial efficiency weighs heavily against a stay because there are no unresolved regulatory issues requiring agency interpretation. The regulations are clear, and the Court is fully competent to interpret and apply them without OFAC's involvement.

Because CAE is not prohibited from issuing SGS a refund under any applicable U.S. regulations, Defendants' motion to stay action pending determination by Office of Foreign Assets Control should be **denied**.

### STATEMENT OF RELEVANT FACTS

In late-2022, SGS was searching for two used/salvaged Hitachi High-Technologies Corp. Scanning Electron Microscopes ("Equipment") for refurbishing and re-sale to an end user (not

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

SMIC). *See* FAC, ¶ 23. SGS reached out to CAE, an agent that sources such items from third parties. *Id*. at ¶ 24. When Equipment was reportedly located, SGS was asked to place a bid for same, which CAE advised was won. *Id*. at ¶ 25-27. SGS entered a contract with CAE for said purchase. *Id*. at ¶ 26. On December 9, 2022, SGS paid CAE $2,000,000.00 for the Equipment. *Id*. at ¶ 29. No delivery was made by December 10, 2022 (*id*.), the estimated delivery date under the relevant Purchase Order (Dkt. No. 37-2).

On or about December 13, 2022, CAE first requested that SGS complete an Ultimate Consignee/End User Statement form and an Ultimate Consignee/End User Statement, Additional Information form ("EUS") for its end user (not SMIC) before the Equipment could be exported per the Regulations. *See* FAC, ¶ 30. SGS promptly completed and returned the forms. *Id*. No issues were raised by CAE. On January 6, 2023, CAE acknowledged receipt of the EUS form and advised that CAE was "making arrangements for the removal of the equipment" and completing a "logistics survey" before a delivery schedule could be provided. *Id*. at ¶ 31. On January 17, 2023, CAE advised SGS that it was working with vendors to get the best crating quotation for the project. *Id*. at ¶ 32. CAE advised that it estimated release of one of two pieces of Equipment in early February 2023, with crating to occur within a week thereafter. *Id*. CAE estimated the release of the second piece of Equipment by June 2023, using the same procedure. *Id*. On February 1, 2023, CAE confirmed a processing schedule for the first piece of Equipment. *Id*. at ¶ 33.

Over the next couple of months, CAE engaged SGS in discussions about the process and cost of deinstallation and decontamination of the Equipment for export. *Id*. at ¶ 34. No mention was made of SMIC. Concerned about whether the Equipment was operational given the delays and vague information being provided by CAE, SGS requested an inspection of the Equipment. *Id*. CAE first stalled and then stated that the Equipment had already been de-installed, decontaminated, and locked down by its own personnel. *Id*. When SGS requested to inspect the

PLAINTIFF'S OPPOSITION TO DEFENDANTS' NOTICE OF MOTION AND MOTION TO STAY ACTION

LAW OFFICES

SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

same for packing purposes, CAE refused to provide the exact location of the Equipment and denied SGS access under the guise of continued quality inspections. *Id*.

As a result of CAE's delays, the original end user for the Equipment terminated its agreement with SGS. *Id*. at ¶ 36. On June 8, 2023, SGS demanded delivery of the Equipment or the issuance of a refund, but Defendants evaded the issue. *Id*. at ¶ 37. In an effort to mitigate its damages, SGS was able to secure an alternate buyer for the Equipment in **Singapore** (not SMIC). *Id*. at ¶ 38. At CAE's request, SGS submitted a new EUS form to CAE. *Id*. On August 9, 2023, CAE reported to SGS that they expected the process to go more quickly moving forward. *Id*. Yet, CAE's pattern of delays continued. *Id*.

Approximately one year after contracting with SGS on the assurance that the Equipment would be promptly delivered, in December 2023, CAE explicitly refused to perform under the Contract, citing the Regulations. *Id*. at ¶ 41. Notably, the export control restrictions and regulations upon which CAE relied to excuse their agreed performance have been in place since October 7, 2022; that is, before CAE entered the subject contract with SGS. *Id*.

**A. The Regulations**

*1. OFAC*

On November 14, 1994, by Executive Order 12938, the President declared a national emergency with respect to the threat to the United States posed by the proliferation of nuclear, biological, and chemical weapons (weapons of mass destruction) and the means of delivering such weapons. *See* Continuation of the National Emergency With Respect to the Proliferation of Weapons of Mass Destruction, 89 FR 88867. On July 28, 1998, Executive Order 12938 was amended in an effort to respond more effectively to the worldwide threat of weapons of mass destruction proliferation activities. *Id.* On June 28, 2005, by Executive Order 13382, the President, among other things, further amended Executive Order 12938 to improve [the United States']

ability to combat proliferation. *Id.*

On April 13, 2009, the Office of Foreign Assets Control ("OFAC") issued a rule "adding a new part to the Code of Federal Regulations to carry out the purposes of Executive Order 13382 of June 28, 2005." *See* Weapons of Mass Destruction Proliferators Sanctions Regulations, 74 FR 16771-01. Specifically, **names of entities whose property and interests in property are blocked pursuant to Executive Order 13382** were to be "published in the Federal Register and incorporated into the Office of Foreign Assets Control's (OFAC) Specially Designated Nationals and Blocked Persons List ("SDN List") with the **identifier "[NPWMD]**." *See* 31 C.F.R. § 544.201(a), Note 1. Note 1 further specifies that "[t]he names of persons identified in or pursuant to E.O. 13959, as amended, are published in the Federal Register and incorporated into OFAC's **Non–SDN Chinese Military–Industrial Complex Companies List (NS–CMIC List)** using the following identifier formulation: **"[CMIC–EO13959]**." 31 C.F.R. § 586.201, Note 1.

On June 3, 2021, Executive Order 14032 was enacted, prohibiting "**the purchase or sale of any publicly traded securities**, or any publicly traded securities that are derivative of such securities or are designed to provide investment exposure to such securities, of any person listed in the Annex to this order or of any person determined by the Secretary of the Treasury…" *See* Addressing the Threat from Securities Investments That Finance Certain Companies of the People's Republic of China, 86 FR 30145. On February 16, 2022, OFAC issued a final rule adding regulations to implement [Executive Order 14032] related to securities investments that finance Chinese military companies. *See* Chinese Military-Industrial Complex Sanctions Regulations, 87 FR 8735-01.

### 2. *BIS and EAR*

In 2018, Congress passed the Export Control Reform ACT ("ECRA"), which charged the executive branch of the U.S. Government with using export controls to regulate specified **items** to

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

LAW OFFICES

SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

be sold to specified entities or locations in the interest of national security. As a result of this act, the United States Department of Commerce's Bureau of Industry & Security ("BIS") restricted transactions that relate to exporting, reexporting, and transfers of specified items to specified countries, including China, unless a license was obtained. An "item" is defined as "commodities, software, and technology," not money. Financial activities have not been listed as an "EAR item." Items and activities that are not subject to the Export Administration Regulations ("EAR") are outside the regulatory jurisdiction of the EAR and are not affected by these regulations.

The associated regulations are codified in Title 15 of the Code of Federal Regulations, have been effective since October 2022, and provide, in relevant part, the following:

15 C.F.R. § Pt. 744, Supp. 4: The Entity List is the published names of foreign businesses that are subject to license requirements for the export, reexport, and transfer of **items subject to the EAR**. 15 C.F.R. § Pt. 744, Supp. 4 (emphasis added). A United States person is prohibited from the export, reexport, and transfer of items subject to the EAR to a company **on the entity list** without obtaining a license for that item. SMIC has been on the Entity list since at least December 23, **2020**, before CAE and SGS' business relationship began. SGS does not appear on the list at all. The refund of a purchase price for undelivered equipment is not an item subject to the EAR.

15 C.F.R. § 736.2: This section imposes prohibitions to the licensing requirements of the Entity List. BIS enforces ten general prohibitions for "certain exports, reexports, transfers (in-country), and other conduct, subject to the scope of the Export Administration Regulations ("EAR"), in which you may not engage unless you . . . have a license from the Bureau of Industry and Security (BIS)[.]" 15 C.F.R. § 736.2(b). Conduct that is subject to the EAR is activities that support proliferation and certain military end users. *Id*. As such, the EAR requires a U.S. person to conduct due diligence into the end-user of an item. This regulation has an effective date of September 15, 2022, before SGS and CAE entered the contract at issue. SMIC appears on the Entity List as a partially restricted entity. SIHL and SGS do not. SMIC was not the end user of the equipment at issue and SGS' funds are not considered an "item".

15 C.F.R. § 744.11: This section outlines the licensing requirements for transactions involving a party that is on the Entity List. *Id*. at § 744.11. Specifically, the regulations require a license for any **item subject to the EAR** when **an entity included on the Entity List** is **a party to the transaction**. This statute first came into effect on October 7, 2022, before SGS and CAE entered the subject contract. SMIC is included on the Entity List as a partially restricted entity, but it is not a party to the transaction at issue in this lawsuit.

LAW OFFICES

SIDEMAN & BANCROFT LLP

ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

15 C.F.R. § 744.23: This section describes the licensing requirements for specified "supercomputer" items subject to EAR when an exporter has "knowledge at the time of export, reexport, or transfer (in-country) that the item is destined for a [specified] destination, end use, or type of end user[.]" *Id.* at § 744.23(a). Included in this section are the licensing requirements for semiconductor manufacturing equipment destined to the PRC. *Id.* at 744.23(a)(4). This statute first came into effect on October 7, 2022. **"Items" do not include money to be refunded to the purchasing party**.

15 C.F.R. § 744.6: This section prohibits any "U.S. person" without a license from BIS from "support[ing]" a "military-intelligence end use" or "military-intelligence end user" in the PRC. *Id.* at § 744.6(b)(5). A "military-intelligence end use" is defined as the "development," "production," "operation," "installation," or other activities involving items described on the U.S. Munitions List (USML) intended to support the actions or functions of a "military-intelligence end user." *Id.* at § 744.22(f)(1). Supplement No. 7 to Part 744 publishes the list of Military End-Users. *Id.* at § Pt. 744, Supp. 7. **Neither SMIC, SIHL nor SGS appear on that list**.

To prevent violations of these national licensing regulations by U.S. persons seeking to do business relating to restricted items with regulated countries, the **BIS imposes "Know Your Customer" due diligence guidance** within the EAR to be completed by the U.S. person **before the U.S. person enters a contract** for the export, reexport, or transfer of items to a regulated country. Notwithstanding, the plain language of the cited regulations do not impose any licensing requirements for a refund here. SGS is not on OFAC's Sanctions List or the BIS Entity List. SGS' investor, SHIL, is not on OFAC's Sanctions List or the BIS Entity List. SMIC is designated under the CMIC-EO13959 program as a **partially** regulated entity, and thus subject to Executive Order 14032 prohibitions relating **only to the purchase and sale of its publicly traded securities**, which situation does not exist here. *See* Ghafoor Decl., Ex. A.

**B. CAE and SGS Form a Business Relationship**

Beginning in October 2021 through July 2022, SGS and CAE engaged in twelve smaller transactions, some of which involved the export of secondhand semiconductor equipment to China, without issue. SGS provided all compliance documents requested by CAE during these prior dealings. CAE was legally required to conduct due diligence surrounding the Regulations before entering each of these contracts. 15 C.F.R. § 736.2. If it were found that any particular

transaction was "support[ing]" a "military-intelligence end use" or "military-intelligence end user" in China, CAE was required to obtain the requisite license for itself to engage in such transactions before entering any such contract. 15 C.F.R. § 744.6. CAE never raised any red flags about SGS' corporate structure or the Regulations at this time, and never applied for any licenses, to SGS' knowledge. Little did SGS know, CAE was slowly building SGS' trust to facilitate CAE's grander scheme.

### C.  The Subject Transaction Between SGS and CAE

In late-2022, SGS was in the market for two used/salvaged scanning electron microscopes (the "Equipment") for refurbishing and re-sale to an end user (not SMIC) located in China. This time, SGS' budget was $2,000,000, more than double any prior transaction. SGS reached out to CAE as a "trusted" provider to find suitable equipment. On or about November 29, 2022, CAE issued to SGS an Invoice Order for this purpose. Soon thereafter, CAE advised it had located the desired equipment. CAE instead invited SGS to place a bid for the Equipment. Between November 30 to December 6, 2022, CAE agents Tóth and Hung advised SGS that it had won its bid, and they assured SGS that the Equipment could be delivered by CAE to China within three days of purchase; that is, by December 10, 2022, to solicit an upfront payment from SGS of the full $2,000,000. Trusting in CAE's assurances about having located suitable equipment, the purported expertise of CAE's dedicated compliance department in navigating the BIS Regulations, CAE's ability to secure export licensing for the Equipment quickly, and its ability to export the Equipment promptly, SGS made an offer of $2,000,000 "T/T 100% down payment" for purchase of the Equipment.

After CAE accepted the offer (but could have rejected it), the Purchase Order was formed on December 7, 2022. Austin Gill signed the Contract on behalf of CAE. Thereafter, CAE delayed delivery of the Equipment for over a year, refused to allow SGS to confirm the Equipment actually

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

LAW OFFICES

SIDEMAN & BANCROFT LLP

ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1   existed, and ultimately refused to deliver the Equipment to SGS' designated end user in China,

2   refused to release the Equipment to SGS in the U.S., and refused to refund to SGS its purchase price.

3   SGS contends that the Equipment was not secured by CAE in the first instance and, even if it were,

4   SGS funds for the purchase and delivery of same have been misappropriated for the benefit of

5   Defendants, including the individual Defendants who control the totality of CAE operations.

6       Defendants now seek a stay action pending determination of a phantom application allegedly

7   filed two and one-half years after-the-fact with OFAC seeking a license to release to SGS its own

8   money. Such an abuse of administrative and judicial processes should not be permitted.

9                                    **LEGAL STANDARD**

10      A district court has the power to stay proceedings "incidental to the power inherent in

11  every court to control the disposition of the causes on its docket with economy of time and effort

12  for itself, for counsel, and for [the] litigants." *E. Bay Sanctuary Covenant v. Trump*, 354 F. Supp.

13  3d 1085, 1088 (N.D. Cal. 2018). The issuance of a stay is a matter of judicial discretion, and the

14  "**party requesting a stay bears the burden of showing that the circumstances justify an**

15  **exercise of that discretion.**". *Id.* at 1089 (emphasis added).  In exercising its discretion, the Court

16  must consider four factors: "(1) whether the stay applicant has made a strong showing that he is

17  likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay;

18  (3) whether issuance of the stay will substantially injure the other parties interested in the

19  proceeding; and (4) where the public interest lies." *Id.*  Under Ninth Circuit precedent, the movant

20  "must show that irreparable harm is probable and either: (a) a strong likelihood of success on the

21  merits and that the public interest does not weigh heavily against a stay; or (b) a substantial case

22  on the merits and that the balance of hardships tips sharply in the [movant's] favor." *Id.*

23                               **ARGUMENTS AND AUTHORITIES**

24      Defendants' motion to stay this action pending an OFAC determination should be denied

25

26

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS' NOTICE OF MOTION AND MOTION TO STAY ACTION

in its entirety. SGS submits that the sanctions cited by Defendants apply to an OFAC program to which neither SGS nor SMIC, a nonparty to any transaction at issue, are subject. SGS submits that Defendants have miscategorized SMIC under the wrong OFAC program and are applying prohibitions that do not actually apply. Any confusion about whether CAE may issue a refund to SGS stems from a fundamental misunderstanding by Defendants of OFAC's regulatory framework.

### A. No Justiciable Issue Exists for OFAC Because SMIC Is Not Subject to NPWMD Sanctions

Defendants argue that "OFAC's determination will resolve an issue important to this matter" by confirming whether CAE's refund to SGS is barred under the "Weapons of Mass Destruction Proliferators Sanctions" program. *See* Dkt. 37, p. 10. Defendants' premise is legally and factually incorrect – SMIC has never been designated under Executive Order 13382 ("the NPWMD program"), so there is no open question for OFAC to decide.

#### 1. SMIC is not listed under Executive Order 13382's Annex or implementing regulations (31 C.F.R. § 544.201) nor has OFAC designated SMIC in the NPWMD program

Section 1(a)(i) of Executive Order 13382—and its implementing regulations in 31 C.F.R. § 544.201—only block property of those foreign parties "listed in the Annex to this order" or subsequently designated for WMD proliferation by the Secretary of State. *See* Blocking Property of Weapons of Mass Destruction Proliferators and Their Supporters, 70 FR 38567, 31 C.F.R. § 544.201. Here, OFAC has not designated SMIC in the NPWMD program. *See* Ex. A. Because SMIC is not an NPWMD "blocked person," there is no "property or interests in property" of an NPWMD-designated entity for OFAC to freeze or clarify.

#### 2. 31 C.F.R. § 544.201 prohibits only dealings with "blocked property," and no NPWMD determination is needed

Under 31 C.F.R. § 544.201, OFAC may block transactions in "property or interests in

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

property" belonging to NPWMD-designated parties. *See* 31 C.F.R. § 544.201. But if SMIC is not designated under EO 13382 or by the Secretary of State, it has no "blocked property"—and thus OFAC cannot prohibit any transaction. Defendants' request to stay the action for OFAC guidance ignores the fact that there is simply no blocking determination pending as to SMIC. In short, there is no legal ambiguity for OFAC to resolve - SMIC falls outside the scope of 31 C.F.R. § 544.201, and so the refund is not implicated by EO 13382 at all.

### B. Defendants Misapply NPWMD Sanctions Instead of CMIC-EO 13959 Sanctions

Defendants repeatedly conflate two distinct OFAC programs—(a) the "Weapons of Mass Destruction Proliferators" regime (NPWMD program) and (b) the "Communist Chinese Military-Industrial Complex" ("CMIC") securities-investment regime ("CMIC-EO13959 program") pursuant to Executive Order 13959 and amended by Executive Order 14032. Their motion rests on the erroneous premise that SMIC is subject to NPWMD blocking, when in fact SMIC is designated only under the CMIC-EO13959 program. *See* Ghafoor Decl., Ex. A. The legal consequences differ, and only the former's restrictions could possibly bear on a refund, even though there is no basis to conclude that they actually do.

#### 1. CMIC-EO13959 program restricts the purchase or sale of certain securities— it does not block "property or interests in property" outright

Executive Order 13959, as amended by Executive Order 14032, prohibits any U.S. person from "purchas[ing] or sell[ing] any publicly traded securities…of any person listed in the Annex to this order," or any entity "owned or controlled…by" a listed CMIC entity. *See* Addressing the Threat From Securities Investments That Finance Certain Companies of the People's Republic of China, 86 FR 30145. Because SMIC is listed under EO 14032, any transaction that qualifies as a "**purchase or sale" of SMIC securities** is prohibited. *Id.* But a cash refund **is not** a "purchase or sale" of securities; it is simply the return of funds. By contrast, the NPWMD program bars any transaction "by a United States person … in property or interests in property" of an NPWMD-

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

designated party. *See* Weapons of Mass Destruction Proliferators Sanctions Regulations, 74 FR 16771-01, ¶ 3. SMIC is **not designated** in the NPWMD program.

### 2. Because Defendants improperly transposed NPWMD prohibitions onto a CMIC designation, their entire theory of stay is flawed

Even if OFAC were to confirm SMIC's CMIC listing as a partially regulated entity (an uncontested fact), nothing changes. Under Executive Order 14032, a U.S. person is prohibited from purchasing CMIC-designated securities—but a cash refund is not considered the purchase or sale of any such security. *See* Addressing the Threat From Securities Investments That Finance Certain Companies of the People's Republic of China, 86 FR 30145. In this case, the cash refund is not even to be paid to SMIC, but to be returned to SGS. By seeking a stay until OFAC "clarifies" whether SMIC is subject to NPWMD, Defendants ask this Court to entertain a red-herring question. There is no genuine ambiguity. SMIC is in the CMIC-EO 13959 program only, not NPWMD, so Executive Order 13382 does not apply. *See* Ex. A. Consequently, the refund presents no live "OFAC issue," and the stay motion should be denied.

### C. Primary Jurisdiction Doctrine Does Not Apply Because the Legal Question Is Unambiguous and Does Not Require OFAC Expertise

Defendants contend that "OFAC's unique expertise" and the "complexity of the regulations" require OFAC deference. *See* Dkt. 37, p. 8-9. But here, there is no interpretive puzzle: the governing regulations plainly distinguish the CMIC-EO 13959 program from the NPWMD program and clarify that only NPWMD-designated entities are subject to blocking under 31 C.F.R. § 544.201. Because the dispositive facts—SMIC's program designation and the nature of a cash refund to SGS—are indisputable, no agency opinion or formal OFAC ruling is needed.

### 1. Primary jurisdiction doctrine is meant for issues demanding agency expertise or uniform administration

"Primary jurisdiction is properly invoked when a claim is cognizable in federal court but requires resolution of a . . . particularly complicated issue that Congress has committed to a

PLAINTIFF'S OPPOSITION TO DEFENDANTS' NOTICE OF MOTION AND MOTION TO STAY ACTION

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

LAW OFFICES

SIDEMAN & BANCROFT LLP

ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

regulatory agency." *Brown v. MCI WorldCom Network Servs., Inc.*, 277 F.3d 1166, 1172 (9th Cir. 2002). "The doctrine applies when protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme." *Id.* Primary jurisdiction is not implicated simply because a Federal Agency "could" have jurisdiction over an issue. *Id.*

Here, the notion that OFAC's sanctions pertaining to SMIC are "complex" rings hollow. OFAC provides a single, publicly accessible sanctions list search that anyone can consult to determine exactly which program—if any—applies to a given entity. In practice, compliance boils down to four simple steps:

    a.   Go to https://sanctionslist.ofac.treas.gov/Home/index.html.

    b.   Enter the entity's name in the search box.

    c.   Look at the resulting Entity Report, which identifies the sanction program. *See* Ex. A.

    d.   Read the specific regulations for that program, all of which are hyperlinked right on the report page.

*See* Ghafoor Decl., Ex. A. Following this process for SMIC reveals that SMIC is listed only under the CMIC-EO 13959 program. *Id.* This program unambiguously limits only the purchase and sale of SMIC's securities, nothing more. *Id.* Defendants' effort to drag unrelated NPWMD provisions into this case adds needless confusion and ignores OFAC's transparent process. That obfuscation should not be rewarded by this Honorable Court.

**D. Permitting the stay would needlessly delay this case and undermine this Court's role in resolving straightforward legal disputes**

The purpose of the primary jurisdiction doctrine is not to "secure expert advice" from an agency "every time a court is presented with an issue conceivably within the agency's ambit." *Robles v. Domino's Pizza, LLC,* 913 F.3d 898, 910 (9th Cir. 2019). Rather, "'efficiency' is the 'deciding factor' in whether to invoke primary jurisdiction." *Id.* "[P]rimary jurisdiction is not required when a referral to the agency would significantly postpone a ruling that a court is

LAW OFFICES

SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

otherwise competent to make." *Id. Robles* involved a blind plaintiff challenging Domino's website and app under the ADA. *Id.* The district court applied primary jurisdiction, deferring the matter to the DOJ. *Id.* The Ninth Circuit held that determining whether Domino's digital platforms provide "effective communication" and "full and equal enjoyment" of its services involves interpreting statutory standards well within a court's expertise. *Id.* at 910-11. Because these issues required no specialized technical guidance, it was determined that the court was fully competent to resolve them without referring to DOJ, and invoking primary jurisdiction would only cause "needless delay." *Id.* at 910.

Here, Defendants' invocation of primary jurisdiction ignores that courts regularly interpret statutory and regulatory standards without agency input. As in *Robles*, this Court is fully competent to decide whether CAE failed to perform under the subject contract, whereby a refund of SGS' purchase price for the subject Equipment is warranted without OFAC's technical guidance. This Court is also fully competent to decide whether a refund to SGS is considered a "purchase or sale" of SMIC securities. Because this issue falls squarely within judicial expertise, the primary jurisdiction doctrine should be rejected.

Defendants next point to SMIC's designation under the CMIC—EO 13959 program—but OFAC has already determined the scope of that program, which narrowly targets the purchase and sale of SMIC's publicly traded securities. OFAC has not restricted refunds or other financial transactions at issue in this case, and Defendants do not—and cannot—explain why issuing a refund to SGS would violate any applicable OFAC regulation. The relevant CMIC—EO 13959 and NPWMD programs also specify their separate scopes, confirming that no specialized agency interpretation is needed. Thus, as in *Robles*, where the court rejected primary jurisdiction because it would cause "needless delay," this Court should decline Defendants' request for a stay.

//

**E.  Issuing SGS a Refund is not a Prohibited Action under BIS Regulations**

Defendants argue that if this Court directs CAE to refund SGS, CAE could face criminal liability and penalties. *See* Dkt. 37, p. 4, 11. To support this argument, Defendants rely on 15 C.F.R. § 744.6(b), which prohibits any "U.S. person" from, without a license from BIS, "support[ing]" a "military-intelligence end use" or "military-intelligence end user" in the People's Republic of China. *See* 15 C.F.R. § 744.6(b)(5). In other words, before a U.S. person may contract in transactions supporting a military-intelligence end use or end-user, the U.S. person must be licensed to do so. A "military-intelligence end use" is defined as the "development," "production," "operation," "installation," or other activities involving items described on the U.S. Munitions List (USML) intended **to support the actions or functions of a "military-intelligence end user."** *See* 15 C.F.R. § 744.22(f)(1)(emphasis added). A "military-intelligence end user" is defined as any intelligence or reconnaissance organization of the armed services (army, navy, marine, air force, or coast guard), or the national guard. *See* 15 C.F.R. § 744.22. Here, it is uncontested that SMIC was not the end user of the Equipment. To the extent CAE argues that the "end use" or "end user" of the refund is SMIC, there is no evidence whatsoever to suggest any such speculative remark. Further, money is not an "item" contemplated by the Regulations. Moreover, Supplement No. 7 to Part 744 publishes the list of Military End-Users, and SMIC **does not appear** on that list. *See* 15 C.F.R. § Pt. 744, Supp. 7. Neither do SGS or SIHL for that matter. *Id.* Therefore, Defendants face no risk of penalties or violations of BIS regulations by issuing a refund of its purchase price to SGS.

Even assuming *arguendo* that the statute applies to SGS through its connection to SMIC, Defendants fail to disclose that this prohibition only applies to the extent that the underlying activity is not already subject to regulation by another federal agency, such as OFAC. *See* 15 C.F.R. § 744.6(a). Here, the underlying activity at issue is a financial payment. As discussed

extensively above, OFAC is the federal agency that regulates payments made to designated foreign entities, and it has issued clear regulatory guidance on which financial payments are prohibited with respect to SMIC. Moreover, Defendants themselves appear to recognize that OFAC governs this activity, as their motion only seeks a stay for a determination from OFAC—not from BIS. A refund under the circumstances here is conclusively not prohibited under OFAC regulations. Accordingly, the prohibitions under § 744.6(b) are moot.

### F.  It is Against Public Policy to Stay this Action

Defendants contend that granting a stay would serve the public interest. *See* Dkt. 37, p. 12. To support this argument, Defendants assert that the relevant BIS regulations are designed to protect U.S. national security interests, that "SGS allegedly has ties to an entity recognized by U.S. regulators as threatening those interests, and that OFAC's mission is to regulate transactions with significant national security implications." *Id*. However, this argument is fundamentally flawed. It disregards the fact that OFAC has already determined the scope of the national security threat posed by SMIC. Specifically, OFAC placed SMIC in a sanctions program that narrowly targets the purchase and sale of SMIC's publicly traded securities—nothing more. *See* Stmt. Of Facts ("SOF") p. 8-11. Indeed, OFAC has not restricted the financial transactions at issue here, nor has it suggested that issuing refunds implicates national security concerns. *Id*.  A stay here would unjustifiably delay relief for SGS and reward Defendants' manipulation of regulatory authority. Consequently, the public interest is best served by this Court proceeding without delay. *See Mccabe v. Floyd Rose Guitars*, No. 10-CV-0581 JLS JMA, 2011 WL 1379861, at *1 (S.D. Cal. Apr. 12, 2011)(Denying a Motion to Stay in part because the stay would not simplify the issues in question or streamline the trial.); *Jenam Tech, LLC v. Google LLC,* 630 F. Supp. 3d 1208, 1212 (N.D. Cal. 2022)(Denying a motion to stay because it was not clear to what degree a stay would actually simplify the issues); *Entangled Media, LLC v. Dropbox Inc.*, 732 F. Supp. 3d 1120, 1124

LAW OFFICES

SIDEMAN & BANCROFT LLP

ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

LAW OFFICES

SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

1    (N.D. Cal. 2024)(Denying a motion to stay of a Patent Claim pending resolution of a IPR petition

2    because the PTAB has not instituted a review and any simplification of the issues is speculative.)

3    **G. Defendants Have Not Satisfied Their Burden of Showing an Irreparable Injury if**
     **a Stay is Denied**

4

5    A party requesting a stay . . . "bears the burden of showing that the circumstances justify

6    an exercise of that discretion." *Doe #1 v. Trump,* 957 F.3d 1050, 1058 (9th Cir. 2020). "In the

7    context of a stay request, "simply showing some possibility of irreparable injury" is insufficient."

8    *Id.* at 1058-59. Here, Defendants' claims fail even to demonstrate a possibility of irreparable

9    injury. As discussed *supra*, OFAC regulations do not prohibit CAE from refunding SGS under the

10   circumstances presented here. Instead, Defendants merely reference the existence of certain

11   regulatory frameworks applicable to some entities, without articulating any plausible connection

12   between those regulations and SGS and SMIC.

13

14   First, Defendants invoke Executive Order 12938, which addresses the threat posed by

15   nuclear, biological, and chemical weapons (weapons of mass destruction) and the means of

16   delivering such weapons, as a basis to withhold the refund. Yet, they provide no explanation of

17   why or how SGS and SMIC fall within the scope of these regulations. Second, Defendants suggest

18   that a refund could violate BIS export regulations. However, they again fail to explain how or why

19   these regulations would apply to SGS. This is no accident. Defendants are attempting to

20   mischaracterize SMIC's status under certain designated programs by applying prohibitions that are

21   applicable only to unrelated designated entities. Such a strategy misleads rather than informs and

22   cannot justify a stay of these proceedings.

23

24   **CONCLUSION**

25   WHEREFORE, premises considered, Plaintiff respectfully requests that Defendants' motion

26   to stay action pending determination by Office of Foreign Assets Control be denied in its entirety.

27

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS' NOTICE OF MOTION AND MOTION TO STAY ACTION

Signed on June 11, 2025.

Respectfully submitted,

/s/Henna Ghafoor                              .
Henna Ghafoor
MOSAIC Paradigm Law Group PC
10370 Richmond Avenue, Suite 850
Houston, Texas 77042
Telephone: (281) 805-7169
Facsimile: (281) 805-7172
E-mail:  hghafoor@mp-lg.com

Lyndsey C. Heaton
SIDEMAN & BANCROFT LLP
One Embarcadero Center
Twenty-Second Floor
San Francisco, CA 94111
Telephone:  (415) 392-1960
Facsimile:  (415) 392-0827
E-mail:   lheaton@sideman.com

ATTORNEYS FOR PLAINTIFF,
SEMICONDUCTOR GLOBAL
SOLUTIONS

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711